INTERNATIONAL FORWARDING Co., INC. v. UNITED STATES

No. 4897.—Invoice dated Reutlingen, Germany, May 4, 1939.
Entered at New York, May 18, 1939.
Entry No. 846518.

(Decided May 7, 1940)

*Benjamin A. Levett* for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Dorothy C. Bennett*, special attorney), for the defendant.

DALLINGER, Judge: This appeal to reappraisement involves the question of the dutiable value of certain paper tubes imported from Germany and entered at the port of New York in May 1939. They were entered and appraised on the basis of the United States value, as defined in section 402 (e) of the Tariff Act of 1930.

It is agreed that said merchandise has no foreign or export value; that the United States value is the correct basis of appraisement; that the basic selling price of said tubes in the United States is that returned by the appraiser; that said merchandise was imported subsequent to the promulgation by the Treasury Department of the regulations contained in T. D. 49821 imposing a countervailing duty deposit of 25 per centum of the invoice value under section 303 of the

Tariff Act of 1930 on products of Germany purchased by the importer otherwise than by direct cash payment to the seller; that the plaintiff herein purchased copper and cotton in the American market, caused it to be shipped to Germany and there sold, the proceeds being deposited in the Deutsches Bank to the credit of the plaintiff; that when the imported articles were purchased from the manufacturer by the plaintiff payment was made to said manufacturer by the Deutsches Bank which then debited the amount of payment against the account of the plaintiff; that the copper and cotton sold for the plaintiff's account in Germany realized a profit for the plaintiff over the cost of said copper and cotton in this country plus transportation charges, commissions, etc.; that inasmuch as the plaintiff had made a substantial profit on the copper and cotton it was satisfied to sell the imported tubes in the American market at a price practically equivalent to the price paid by the importer to the German manufacturer, plus transportation and other expenses incident to landing the merchandise duty paid in this country, plus the overhead expenses of plaintiff's business in this country; that the price paid by the plaintiff to the German manufacturer in marks was that stated on the invoice; that the appraiser found that the United States value was to be ascertained by taking the plaintiff's selling price in this country at a certain figure which is not disputed by the plaintiff, with an allowance for transportation, insurance, ordinary duty, and 8 per centum for overhead, but without allowance for profit, inasmuch as it is conceded that the plaintiff had made no profit on the imported merchandise but only on the copper and cotton out of the proceeds of which the imported articles were purchased; that it appears from the official records that upon the importation of the merchandise at bar the collector received a deposit of 25 per centum ad valorem and 1 cent per pound as duties on said merchandise, and demanded an additional deposit of 25 per centum of the invoice price in accordance with the provisions of T. D. 49821; and that the appraiser deducted from the price at which such or similar prototype merchandise at the time of the exportation hereof was sold by the plaintiff, transportation and insurance charges, 8 per centum general expenses, and the regular duty payable on the merchandise under the proper schedules of the Tariff Act of 1930, but refused to deduct the 25 per centum of the invoice value deposited with the collector under said T. D. 49821.

Upon the established facts the only question at issue is one of law, to wit: Was the appraiser justified in disallowing the deduction made by the plaintiff on entry of the 25 per centum deposited under said T. D. 49821, the plaintiff contending that such deposit is a duty within the meaning of section 402 (e) of the Tariff Act of 1930, and therefore properly deductible.

Said section 402 (e) defines United States value as follows:

* * * The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, *with allowance made for duty*, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods. [Italics mine.]

Section 303 of said act reads:

SEC. 303. COUNTERVAILING DUTIES.

Whenever any country, dependency, colony, province, or other political subdivision of government, person, partnership, association, cartel, or corporation shall pay or bestow, directly or indirectly, any bounty or grant upon the manufacture or production or export of any article or merchandise manufactured or produced in such country, dependency, colony, province, or other political subdivision of government, and such article or merchandise is dutiable under the provisions of this Act, then upon the importation of any such article or merchandise into the United States, whether the same shall be imported directly from the country of production or otherwise, and whether such article or merchandise is imported in the same condition as when exported from the country of production or has been changed in condition by remanufacture or otherwise, *there shall be levied and paid, in all such cases, in addition to the duties otherwise imposed by this Act, an additional duty* equal to the net amount of such bounty or grant, however the same be paid or bestowed. The Secretary of the Treasury shall from time to time ascertain and determine, or estimate, the net amount of each such bounty or grant, and shall declare the net amount so determined or estimated. The Secretary of the Treasury shall make all regulations he may deem necessary for the identification of such articles and merchandise and for the assessment and collection of such additional duties. [Italics mine.]

The regulations prescribed by the Secretary of the Treasury under authority of said section 303 and promulgated in T. D. 49821, 74 Treas. Dec. 389, are as follows:

TREASURY DEPARTMENT,
OFFICE OF THE COMMISSIONER OF CUSTOMS,
*Washington, D. C.*

*To Collectors of Customs and Others Concerned:*

The Bureau is in receipt of information concerning the operation of so-called "barter" transactions through which the importation into the United States of merchandise from Germany is financed by means of premium prices for certain products, particularly cotton and copper, which satisfies the Bureau that such transactions involve the payment or bestowal of bounties or grants within the meaning of section 303 of the Tariff Act of 1930 (U. S. C. title 19, sec. 1303).

Accordingly, notice is hereby given that dutiable merchandise imported directly or indirectly from Germany, which has been or shall be acquired by or through the disposal of other goods on a premium basis (regardless of the character of such other goods or of the method or means of such disposal), if entered for con-

# 834

sumption or withdrawn from warehouse for consumption after the expiration of 30 days after the publication of this decision in a weekly issue of TREASURY DECISIONS, will be subject to the payment of countervailing duties equal to the net amount of any bounty or grant determined or estimated to have been paid or bestowed upon its exportation from Germany.

Upon the entry for consumption or withdrawal from warehouse for consumption, on or after the effective date of this notice, of dutiable merchandise imported directly or indirectly from Germany, there shall be collected in addition to any other duties estimated or determined to be due, estimated countervailing duties at the rate of 25 per centum of the invoice value. The liquidation of entries covering such merchandise shall be suspended and the facts concerning the manner of payment for the goods shall be reported promptly and in full to the Bureau.

(644.)

JAMES H. MOYLE,
*Commissioner of Customs.*

Approved March 18, 1939:
    H. MORGENTHAU, JR.,
        *Secretary of the Treasury.*

[Filed with the Division of the Federal Register March 22, 1939, 11:54 a. m.]

In his brief filed herein counsel for the plaintiff states:

The plaintiff claims that in arriving at the proper "United States value" there should have been deducted, not only the regular duty assessed under the schedules and the transportation charges and general expenses of the plaintiff, but also the 25% duty assessed by the Collector and deposited by the plaintiff in order to secure release and delivery of its merchandise * * *

\* \* \* \* \* \* \*

There can be no doubt that the 25% assessed by the Collector and paid by the importer is a duty, for Sec. 303 under which the assessment was made, in so many words provides for the levying and paying, in addition to the duties otherwise imposed, of an "additional duty equal to the net amount of the bounty or grant."

The trouble with this statement is that no such additional duty was assessed upon the merchandise by anybody. The simple fact is that, under a regulation prescribed by the Secretary of the Treasury (T. D. 49821) and made pursuant to authority granted under said section 303, a deposit was exacted pending the possible future assessment of an additional duty at such time as the Secretary might determine the amount of the net bounty or grant, if any, made by the German government, which additional duty might be greater or less than the 25 per centum of the invoice value deposit exacted.

In other words, the 25 per centum deposit is in the nature of a bond required to protect and indemnify the Government in case a countervailing duty under said section 303 may be ultimately imposed.

While it is true that there is testimony on pages 11 and 12 of the record in reappraisement appeal 131995–A (which was incorporated herein) that the plaintiff, previous to the importation of the mer-

chandise at bar, had imported identical merchandise and had sold and offered the same for sale at the time of the exportation of the present importation, there is no evidence in the record that a deposit was demanded, much less that any countervailing duty was imposed and collected on the liquidation of the entries there made.

In the case of *Stern Hat Co.* v. *United States*, 26 C. C. P. A. 410, C. A. D. 48, the appellate court said:

> It is only the sale of merchandise imported previous to the dates of exportation of the merchandise being appraised that can be resorted to as a basis for arriving at the United States value of such merchandise.
>
> In the case of *United States* v. *Sheldon & Co.*, 23 C. C. P. A. (Customs) 245, T. D. 48108, speaking of United States value of imported merchandise, we said:
>
> The conclusion of the division as to the method of ascertainment of United States value must be the correct one, under the language of section 402 (e) of said Tariff Act. The said value is the price at which such or similar imported merchandise is *freely offered for sale*, packed, in the principal market of the United States, to all purchasers, *at the time of exportation* of the merchandise which is being valued. This could, of course, be established only by such or similar goods which had been previously imported and were being freely offered for sale at the time of export of the goods being valued. [Italics quoted.]
>
> The correctness of this view is well illustrated in the case before us. *The Government undertakes to select as prototype merchandise in the illustration above given the very merchandise involved in one of the reappraisement appeals before us, the entry of which has not been liquidated by the collector, and the duty upon which cannot be determined until after the determination of this appeal.* [Italics mine.]

It is obvious that the 25 per centum deposit exacted by the collector as security for the possible imposition of a countervailing duty under section 303 and the Treasury Department regulation T. D. 49821 is not applicable to all paper tubes imported from Germany, but only to those importations of paper tubes from Germany the purchase of which was financed, as in the instant case, by means of premium prices for certain products, particularly cotton and copper, which indicate that bounties or grants were being made by the German Government. As aptly pointed out by counsel for the Government in the brief filed herein, the object of requiring this deposit from importers, like the importer herein, which according to its own testimony paid only 26 cents for its marks, was to equalize the landed cost of other importers of the same merchandise who purchased the same in the ordinary course of trade in Germany at 40 cents per reichsmark, that being the proclaimed rate of exchange during the period here involved.

Upon the established facts and the law applicable thereto I find that the appraiser was entirely justified in not deducting the 25 per centum deposit required under T. D. 49821 in determining the United States value of the merchandise at bar; and I therefore find that the proper dutiable value of said merchandise is the amount returned by the appraiser.

Judgment will be rendered accordingly.